873 So.2d 735 (2004)
Clarence BARNES
v.
BECHTEL GROUP, INC. and Industrial Underwriters.
No. 03-CA-1484.
Court of Appeal of Louisiana, Fifth Circuit.
April 13, 2004.
Darleen M. Jacobs, Al Ambrose Sarrat, Jacobs & Sarrat, New Orleans, LA, for Plaintiff/Appellee.
Jeffrey C. Napolitano, Juge, Napolitano, Guilbeau, Ruli & Frieman, Metairie, LA, for Defendants/Appellants.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and THOMAS F. DALEY.
THOMAS F. DALEY, Judge.
Defendant, Bechtel Group (Bechtel), appeals the trial court's judgment that found claimant, Clarence Barnes (Barnes), entitled to permanent and total disability benefits. On appeal, Bechtel argues that the trial court applied the wrong burden of proof to Barnes's claim. Bechtel argues that Barnes did not meet his burden of proving entitlement to permanent and total disability benefits by clear and convincing evidence and unaided by any presumption of disability. After reviewing the evidence and applicable law, we affirm.
*736 Barnes was injured in an on the job accident on July 20, 1992, while employed by the Bechtel Group as a welder. Barnes injured his back while moving a desk. He was 37 years old at the time. Diagnostic studies revealed a bulging disc at L5-S1. After a course of conservative treatment and physical therapy failed to provide pain relief, Barnes underwent lumbar fusion and laminectomy surgery on May 5, 1994, at Ochsner Clinic. The surgery was deemed successful and it appears that Barnes enjoyed relief from back pain for a period of time, but his pain returned.
Mr. Barnes has not worked since his injury in 1992. The parties stipulated that Bechtel paid Barnes benefits for temporary total disability for at least 520 weeks. Thereafter Bechtel apparently discontinued Barnes's benefits or reduced them; the record is not clear.
On appeal, Bechtel argues that the trial court erred in relying on Dr. Jose Ferrer's opinion that Mr. Barnes was permanently and totally disabled. Bechtel argues that Barnes's burden of proof to show permanent and total disability is by clear and convincing evidence. They argue that the trial court applied the wrong burden of proof, because Dr. Ferrer's use of those terms is not in accord with the legal definition of permanent and total disability, which is found in LSA-R.S. 23:1221. Bechtel argues that the legal definition of permanent and total disability excludes someone who can work, but works in pain. They also argue that Dr. Ferrer was merely speculating on the amount of time that claimant might miss from work due to back pain. Bechtel notes that Dr. Robert Applebaum, an orthopedist who saw Barnes, felt that Barnes could return to light duty work, and thus contends that claimant failed in his burden of proof.
A claimant's burden of proof for permanent and total disability benefits is found in LSA-R.S. 23:1221(2)(c): which states:
... compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
Sometime after his surgery at Ochsner in 1994, Barnes moved to Mississippi, where he was treated by a series of doctors for back pain. Barnes was treated by Dr. William Warner in Jackson, Mississippi, for most of the entire year of 1997. He first saw Dr. Warner for back pain following a motor vehicle accident. Dr. Warner found that from an orthopedic standpoint, Barnes's surgical result was excellent, as all the hardware remained in place. Dr. Warner prescribed physical therapy, but it appears that Barnes did not attend all of the recommended appointments, though the records do not indicate a reason. Dr. Warner's records end in December of 1997, when he discharged Barnes, finding maximum recovery from treatment. Dr. Warner found that light work not requiring lifting was possible, but did not recommend Barnes's return to pipefitting.
In 1998, Barnes treated with Dr. Jose Ferrer of the Street Clinic in Vicksburg, an orthopedic surgeon. Dr. Ferrer began treating Mr. Barnes in 1998 and treated him up to the time of trial. Both Dr. Ferrer and Dr. Robert Applebaum, another *737 orthopedist who saw claimant in 1995 and 2003, agreed that Barnes was not a candidate for additional surgery. Dr. Ferrer opined that Mr. Barnes was permanently disabled from any type of work due to the fact that he would have predictably recurring attacks of severe back pain that would require him to miss too much work to be a reliable employee.
At trial of this matter, the depositions of Drs. Ferrer and Applebaum were submitted. Dr. Ferrer was of the opinion that Mr. Barnes could not return to work at all and was 100% permanently and totally disabled, due to recurring attacks of severe back pain, in addition to serious physical restrictions and limitations. Dr. Ferrer chronicled the history of his treatment of Barnes. Since late 1999, Barnes's treatment consisted of periodic series of epidural injections of steroids, which afforded him good but not total relief of pain for up to six months. The injection series can only be repeated every six months. Dr. Ferrer stated that Mr. Barnes received a very good result from the injections, but did not receive total pain relief.
Barnes received his first series of injections in December of 1999. Dr. Ferrer's records showed that Barnes returned to him in April of 2000 with increased pain after a period of relief. Dr. Ferrer prescribed pain medications until the next series of injections could be performed in late May of 2000. At that time, Dr. Ferrer told Barnes he was totally and permanently disabled. This series of injections provided Barnes with relief until approximately May of 2001, at which time a new series of injections was started. After the third injection in August of 2001, Barnes reported doing well. He returned to Dr. Ferrer in January of 2002 reporting an increase in pain, whereupon another series of injections was ordered for March of 2002. Barnes reported in August of 2002 that his pain was back. He was prescribed pain medication until another series of shots began in October of 2002. After his third shot of the series in November 2002, Barnes reported feeling "much better." Barnes returned again in April of 2003 reporting an increase in pain and stating that the functional capacity examination had aggravated his back pain.
Dr. Ferrer expected that Mr. Barnes's future condition and treatment would follow this predictable pattern and render him an unreliable employee. He testified that even with the relief provided by the injections, Mr. Barnes was not at a "functional level." Dr. Ferrer felt that Barnes's pain attacks would leave him absent from work from 1-2 months over a six month period, and that this would be a lifelong problem. His diagnosis was failed back syndrome with no more surgery indicated. He said that the only treatment left to Barnes was of his symptoms (pain). Dr. Ferrer did state, however, that sedentary work was not likely to worsen Mr. Barnes's condition. Dr. Ferrer did not feel that Mr. Barnes was malingering.
Mr. Barnes reported that his pain relief with the injections was around "50%." In between injection series, Dr. Ferrer would prescribe Barnes pain medication to take on an as needed basis. Barnes testified at trial that he needed to take pain medication almost every day, which conflicted with his deposition testimony that when the injections provided him with relief, he needed pain medication only several times a month.
Clint Delong, the rehabilitative counselor who worked with Mr. Barnes, testified at length regarding the job services he provided to Mr. Barnes. Mr. Delong also submitted questionnaires to Drs. Ferrer and Applebaum regarding their opinions of Mr. Barnes's condition, and the results of these questionnaires were also admitted *738 into evidence. Dr. Ferrer's responses mirrored his deposition testimony; he found that Barnes's prognosis was poor, that he had reached maximum medical improvement in 1995 and that no further surgery was indicated. He found that the highest physical demand level that plaintiff might be able to return to work would be sedentary, but he did not feel that plaintiff would ever be able to return to work. Dr. Ferrer gave Mr. Barnes a 100% disability rating.
In his deposition, Dr. Applebaum related that he saw plaintiff in September of 1995. At that examination, the doctor found that plaintiff could perform moderate work and assigned him a 10-15% impairment of the whole body. Dr. Applebaum saw Mr. Barnes again in February of 2003 and obtained an updated medical history, specifically of his treatment for the last several years with Dr. Ferrer. Dr. Applebaum felt that his examination of Barnes showed minimal physical findings with a lot of complaints. As in 1995, he found no evidence of nerve root irritation. He was surprised to learn that Barnes had not attempted to go back to work from 1995 until 2003. While Dr. Applebaum agreed that Barnes experiences some pain, he found no objective findings to prevent Barnes's return to light to moderate duty work. Dr. Applebaum's questionnaire to Clint Delong was not completed, but it indicated his opinion that Barnes could return to sedentary/light duty work.
We find, after reviewing the evidence and case law, that we find no manifest error in the trial court's conclusion that Mr. Barnes is permanently totally disabled. As claimant's treating physician, his opinion is entitled to greater weight than Dr. Applebaum's, who saw Mr. Barnes only twice.
Defendant contends that Dr. Ferrer's diagnosis of Mr. Barnes as totally and permanently disabled does not conform to the legal definition of permanently and totally disabled as found in LSA-R.S. 23:1221. We disagree. Dr. Ferrer specifically found that even the epidural steroid injections did not raise Barnes to a functional level. His deposition testimony and medical records indicate that he did not feel this was a question of Barnes being able to work though while in pain; he felt that Barnes's pain would be too great for him to work, and these periods would occur predictably and regularly so often as to preclude realistic gainful employment, also given the substantial physical restrictions Dr. Ferrer found.
Defendant compares this case to Reed v. Direct Installers, 95-1684 (La.App. 4 Cir. 1/31/96), 669 So.2d 529, which we distinguish on the facts. Reed, like Barnes, suffered an on-the-job back injury and underwent a lumbar laminectomy. Unlike Mr. Barnes, however, Reed's surgeon, Dr. Schuhmacher, released him to work with some restrictions, and actually approved several jobs that a rehabilitation specialist identified for him. Reed then consulted with Dr. Manale, at Dr. Schuhmacher's suggestion, who ordered a functional capacity examination, which concluded that Reed could return to work, with restrictions, for no more than six hours per day. After receiving the FCE report, though, Dr. Manale wrote to the insurance adjuster recommending "all might be served best by declaring the patient totally and permanently disabled rather than continuing to exhaust ourselves and the patient and try and get him `back to work.'"
The court found that while Dr. Manale's comments might indicate his opinion that Reed might never be able to hold a job for long because of the physical problems he would inevitably experience should he return to work, those comments were not sufficient to prove by a preponderance of *739 the evidence that Reed would never again be able to engage in any gainful occupation.[1] We further note that these events in Reed's case took place within two years of his injury, and after his treating physician and an FCE both showed that he could return to some form of work. Also, Dr. Manale's comments are directly opposed to the conclusions of the FCE that he ordered.
In Mr. Barnes's case, he received 520 weeks of disability benefits (which is approximately 10 years) and never returned to work. In addition, Dr. Ferrer diagnosed him with failed back syndrome in 1998, noting that his previously good result from the surgery had deteriorated, has continued to treat him since, and has chronicled a lengthy treatment course that, nonetheless in Dr. Ferrer's opinion, has failed to bring Mr. Barnes to a functional level. Dr. Ferrer, who has had the benefit of a long association with Mr. Barnes, has stated to this court's satisfaction, by clear and convincing evidence, that Mr. Barnes's condition is permanent and that he is unable to engage in any gainful occupation.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] This court notes that the claimant's burden of proof in a permanent total disability case under R.S. 23:1221(2)(c) is by clear and convincing evidence, and not by a preponderance of the evidence, as stated by the Reed court. Both Mr. Barnes and Mr. Reed were injured in 1992, after the statute was revised in 1983 to raise the burden of proof.