ROBERT A. CHAISSON, Judge.
| gPlaintiff, Clara Boutin, appeals a judgment of the trial court granting the motion for summary judgment filed by defendants, the Roman Catholic Church of the Diocese of Baton Rouge, St. Joseph Catholic Church, and their insurer, Catholic Mutual Group.[1] For the reasons that follow, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

This case arises from an accident that occurred on Easter Sunday, April 4, 2010, at St. Joseph Catholic Church in Paulina, Louisiana. As a result of injuries from a fall, Ms. Boutin filed a petition for damages against the Roman Catholic Church of the Diocese of Baton Rouge, St. Joseph Catholic Church, and their insurer, Catholic Mutual Group. In the petition, Ms. Boutin alleged that when mass was over, she “suddenly and without warning” fell as she exited the church onto the outside steps. She further alleged that the outside steps presented an unreasonable risk of harm and that defendants, St. Joseph Catholic Church and the | -¡Roman Catholic Church of the Diocese of Baton Rouge, created or knew that the outside steps presented an unreasonable risk of harm.
Defendants thereafter filed a motion for summary judgment “on the grounds that the pleadings, deposition excerpts of plaintiff Clara Boutin (Exhibit 2), and the attached affidavits of Reverends Frank Uter *245 (Exhibit 8) and Vincent Dufresne (Exhibit 4), together with the uncontested facts, show that there are no genuine issues of material fact[.]” In support of their motion, defendants asserted that Ms. Boutin could not produce evidence to meet her burden of proof at trial as to two required elements of her claim. Specifically, defendants contended that she could not prove that a defect existed in the outside steps that posed an unreasonable risk of harm, and further could not prove that defendants knew or should have known about the defect prior to the incident.
In opposition to the motion, Ms. Boutin argued that she can prove, with her deposition testimony, that the steps were defective “because they were not level and did not have a rail where she exited.” She further contended that, through the deposition testimony of Father Dufresne, she can prove that defendants should have known of the defective condition and unreasonable risk of harm.
Following a hearing, the trial court granted the motion for summary judgment and released defendants from any further proceedings. In its written reasons for judgment, the court found “there is no genuine issue of material fact regarding any defect posing an unreasonable risk of harm to the plaintiff. Also, this Court does not find evidence of defendants having any knowledge or having any reason to know about an alleged defect in the stairs of the Church.”
Ms. Boutin now appeals the trial court’s granting of the summary judgment. She argues that the trial court improperly made credibility determinations in ruling on the motion for summary judgment, and further asserts that the trial court erred |4in ruling that there was no hazardous condition, that defendants did not know of the hazardous condition, and that defendants did not create the hazardous condition. For the reasons that follow, we find no merit to these arguments and affirm the ruling of the trial court which granted defendants’ motion for summary judgment.

DISCUSSION

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Bell v. Parry, 10-369 (La.App. 5 Cir. 11/23/10), 61 So.3d 1, 2. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2). Summary judgments are favored in the law, and the rules should be liberally applied. Alexander v. Parish of St. John the Baptist, 09-840 (La.App. 5 Cir. 3/23/10), 33 So.3d 999, 1003, writ denied, 10-1289 (La.9/17/10), 45 So.3d 1056.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B)(2).
A material fact is one that potentially insures or prevents recovery, affects a litigant’s ultimate success, or determines the outcome of the lawsuit. An issue is genuine if it is such that reasonable persons could disagree; if only one conclusion could be reached by reasonable persons, summary judgment is appropriate as there is no need for trial on that issue. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751; Anny v. Babin, 12-164 (La.App. 5 Cir. 7/31/12), 99 So.3d 702, 705, writ denied, 12-1972 (La.12/14/12), 104 So.3d 441.
15Under LSA-C.C.P. art. 966, the initial burden is on the mover to show that no *246 genuine issue of material fact exists. If the moving party- will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The nonmoving party must then produce factual support to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. art. 966(C)(2); Babino v. Jefferson Transit, 12-468 (La.App. 5 Cir. 2/21/13), 110 So.3d 1123,1125.
Appellate courts review a judgment granting or denying a motion for summary judgment de novo. Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Breaux v. Fresh Start Properties, L.L.C., 11-262 (La.App. 5 Cir. 11/29/11), 78 So.3d 849, 852.
The accident from which this lawsuit arises stems from an alleged defect in the outside steps of the church. LSA-C.C. arts. 2317.1 and 2322 set forth the legal basis for liability in this case. LSA-C.C. art. 2317.1 provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
LSA-C.C. art. 2322 further provides:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original | ^construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
A plaintiff alleging negligence or strict liability of a building owner must prove: (1) the property presented an unreasonable risk of harm; (2) the defendant knew or should have known of the vice or defect; and (3) the damage could have been prevented by the exercise of reasonable care and the defendant failed to exercise such reasonable care. If the plaintiff fails to prove any one of these elements, his claim fails. Breaux, 78 So.3d at 852.
With regard to the element of knowledge, a plaintiff must prove that the defendant had actual or constructive knowledge of the vice or defect. The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant’s garde. Dufrene v. Gautreau Family, LLC, 07-467 (La.App. 5 Cir. 2/22/08), 980 So.2d 68, 80, writs denied, 08-629 (La.5/9/08), 980 So.2d 694 and 08-628 (La.5/9/08), 980 So.2d 698. Constructive knowledge can be found if the conditions that caused the injury existed for such a period of time that those responsible, by *247 the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury. Casborn v. Jefferson Hosp. Dist. No. 1, 11-1020 (La.App. 5 Cir. 5/22/12), 96 So.Sd 540, 543.
In the present case, the trial court granted summary judgment finding that movers met their burden of proving the absence of factual support for two elements of Ms. Boutin’s claim. Specifically, the court found “there is no genuine issue of material fact regarding any defect posing an unreasonable risk of harm to the 17plaintiff. Also, this Court does not find evidence of defendants having any knowledge or having any reason to know about an alleged defect in the stairs of the Church.” Our de novo review of the matter leads us to this same conclusion.
In their motion for summary judgment, defendants argued that Ms. Boutin could not prove that a defect existed in the outside steps that posed an unreasonable risk of harm, and further could not prove that defendants knew or should have known about the defect prior to the incident. To support their arguments, defendants attached excerpts of Ms. Boutin’s deposition, affidavits of Revered Frank Uter and Reverend Vincent Dufresne, and photographs of the area in question.
In her deposition, Ms. Boutin stated that on the day of the incident, she went to mass with her husband, Wilton Boutin. Shortly after noon, when mass was finished, they decided to exit through the side door. Mr. Boutin opened the door and Ms. Boutin stepped out. She explained that as she proceeded, “I put my left foot down and when I went to put the right foot down, all of a sudden — it was quick — I went down on my arm.” She further stated in her deposition that when she came down on her right foot, she lost her balance, noting there was no rail to hold onto at the spot where she fell. Further, prior to her fall, she observed other people exiting the doorway and apparently did not see anyone else trip or fall. She further recalled that it was “nice and sunny” on the day of the incident, and the place where she fell was dry.
In the affidavit of Reverend Frank Uter, he attested that from July 1,1997, through June 30, 2009, he was head pastor of St. Joseph Catholic Church in Paulina and is familiar with the “west” side entrance of the church. Reverend Uter stated that while head pastor, he “did not witness or was made aware of any | ^problems of anyone falling, tripping, or complaining about the condition of the exit stairs or rails on the ‘west’ side of the church (seen in the attached photographs).”
Defendants also attached as an exhibit to their motion for summary judgment the affidavit of Reverend Vincent Dufresne. He attested that he has been the head pastor of St. Joseph Church since July 1, 2009, that he is familiar with the area in question, and that St. Joseph Church was originally built in 1924. He stated that prior to the April 4, 2010 incident, he did not witness, nor was he made aware of, any similar incident of a person tripping, falling, or complaining about the condition of the exit stairs or rails in question. Reverend Dufresne also stated that St. Joseph Catholic Church “employs staff members who monitor the maintenance and needed upkeep of the buildings and grounds. This arrangement has been in place for several years dating back before the incident in question.”
Defendants also attached photographs in connection with these two affidavits. Reverend Uter verified that the photographs accurately reflected the configuration and condition of the steps and handrail on the west side entrance when he arrived in July *248 1997. Reverend Dufresne also verified that the photographs accurately depicted the west side entrance of the church and the condition it was in at the time of the incident. The first two photographs show that a double set of doors led to the exit in question. Outside these doors, there was an initial step, a handrail to the right, and then a series of steps. The third photograph shows a long crack in the concrete on the top step outside the double doors.
In light of this evidence, we find that defendants have shown the absence of factual support for two essential elements of Ms. Boutin’s claim. Specifically, the photographs reflect that there was a railing going down the series of steps, and further do not reflect that the steps were broken, missing, slanted, or uneven. Further, while one photograph shows a crack in the concrete, it does not show that |9the crack produced an uneven surface such as to create a defective condition that presented an unreasonable risk of harm. With regard to the element of .defendants’ knowledge, Father Dufresne and Father Uter, in their affidavits, maintain that defendants had no knowledge of any alleged defect in the steps. Having found that defendants showed the absence of factual support for these two essential elements, the burden of proof thereafter shifted to Ms. Boutin.
Ms. Boutin contends that she can meet her evidentiary burden by pointing to her deposition testimony, the photographs, and the deposition testimony of Father Du-fresne. In her déposition, Ms. Boutin stated that the “offset of the stairway is what caused me to fall.” She explained, “It wasn’t an even surface. It wasn’t level. The side of the concrete dropped.” In her deposition, she further stated that she and her husband went back and measured the offset. When asked how long the offset was, Ms. Boutin stated “maybe eight, nine.”
We find that this deposition testimony is insufficient to establish that Ms. Boutin can meet her evidentiary burden at trial to prove that a defect existed that created an unreasonable risk of harm. In particular, we noté that the photographic evidence does not support Ms. Boutin’s deposition testimony that an offset existed.
With regard to the element of knowledge, Ms. Boutin points to the deposition testimony of Father Dufresne as proof that she can establish that element at trial. In his deposition, Father Dufresne stated that as part of his administrative duties as head pastor, he would oversee the repair of the church. Father Dufresne further stated that on a monthly basis, he would go through the west side door maybe once or twice a month, and that he had gone through the door the Friday prior to the incident.
We do not find this testimony sufficient factual support to show that Ms. Boutin can satisfy her evidentiary burden of proof at trial regarding the essential | inelement of actual or constructive notice. Even if Ms. Boutin’s testimony alone was sufficient to establish that there was some slant to the step such that it could be considered defective, there is no reason to conclude that such defect, which is not discernable from the photographs, should have been discovered by the defendants by reasonable inspection. We therefore find that Ms. Boutin, as the party with the burden of proof at trial, has failed to produce factual support sufficient to show that she will be able to meet her evidentiary burden of proof at trial regarding the element of defendants’ knowledge.

CONCLUSION

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court *249 which granted defendants’ motion for summary judgment and dismissed Ms. Bout-in’s case.

AFFIRMED.

. Plaintiff’s husband at the time of the incident, Wilton Boutin, was also named as a plaintiff in the petition for damages. However, he has not appealed the trial court's granting of defendants’ motion for summary judgment.