MURPHY, J.
h Plaintiff, Lyle Luquette, has appealed the trial court judgment in favor of Great Lakes Reinsurance (UK) and Ron Keller. For the reasons that follow, we reverse the judgment of the trial court and enter judgment in favor of plaintiff.
FACTS AND PROCEDURAL HISTORY
On June 25, 2014, plaintiff filed a Petition for Damages alleging that he was injured when he slipped and fell on ice: on the ground of a carwash, which was owned by defendant Ron Keller and insured by defendant Great Lakes Reinsurance (UK). The matter proceeded to trial before a judge on February 23,2016,
At trial, plaintiff testified that at about 1:45 p.m. on January 7, 2014, he drove into the first bay at a carwash on Williams Boulevard in Kenner, Louisiana. He exited on the driver’s side of his 2-door Jeep Wrangler and walked around the back of the vehicle. As he walked around the other side of the vehicle, he decided to open the passenger’s door to get his jacket because he was cold. Plaintiff testified that as he grabbed the handle of the passenger door to open the door, he slipped and fell. Plaintiff, who was in good health and 35 years old at the time of the accident, was unable to get up. He called his mother to come assist him. While on the cement floor of the carwash bay, he took pictures of the ground of the carwash, which were admitted into evidence.
Both of plaintiffs parents came to his aid and took him to the emergency room of a nearby hospital. Plaintiff complained of injuries to his neck, back and shoulder. X-rays were taken of his chest at the hospital. He was given pain medication and released a short time later. On January 9, 2014, two days after the accident, plaintiff visited Dr. Ivo Barrone for complaints of pain in his neck, left shoulder and arm, and low back. He was prescribed an anti-inflammatory medication and a muscle relaxer. Physical therapy was also prescribed. Plaintiff |2attended some physical therapy sessions and performed home exercises two or- three times per week. Dr. Barrone ordered an MRI, which was performed on March 18, 2014. The MRI was interpreted by Dr. Lawrence Glorioso as showing a bulging disc at the L4-5 level. On April 2, 2014, Dr. Barrone referred plaintiff to an orthopedist. Plaintiffs last visit with Dr. Barrone was April 30, 2014.
Dr, David Wyatt, an orthopedist, examined plaintiff on April 11, 2014. Plaintiff complained of mid and low back pain, which he described as being 7 to 9 out of 10. Dr. Wyatt prescribed physical therapy, anti-inflammatory medication, and a muscle relaxer. Plaintiff returned to Dr. Wyatt on May 23, 2014, at which time he was discharged and told to return as needed.
Plaintiff returned to Dr. Wyatt on April 24, 2015 with complaints of low back pain. Dr. Wyatt prescribed anti-inflammatory medication and a muscle relaxer. When plaintiff returned to Dr. Wyatt on June 4, 2015 with continued complaints of low back pain, Dr. Wyatt recommended an epidural steroid injection. On June 18, 2015, plaintiff underwent an epidural steroid injection at the L4-5 level for continued complaints of low back pain. Plaintiff returned to Dr. Wyatt on July 16, 2015. A second epidural steroid injection at the same site was rec *346 ommended and was performed on July 31, 2015.
At trial, plaintiff testified that he continues to experience low back pain. He continues to do home exercises and takes over the counter medication to treat this pain.
At the time of the accident, plaintiff was working as an insurance salesman and had a second job working at a bar. At the time of trial, he was no longer working as an insurance salesman; he was working at a restaurant and had a second job working at a bar. He testified that he did not miss any work as a result of this accident.
|sThe deposition of Dr. David Wyatt was introduced into evidence. Dr. Wyatt testified that plaintiff first visited him on April 11, 2014 for complaints of low back pain. He reviewed the films of the MRI taken in March 2014. He identified a small bulge at the L4-5 disc level on the sagittal views of the MRI. The bulge was not visible on the axial views. Dr. Wyatt prescribed physical therapy and anti-inflammatory medication. He discharged plaintiff on May 23, 2014 and told plaintiff to return as needed.
Plaintiff next visited Dr. Wyatt on April 24, 2015 stating that his low back pain had increased. Dr. Wyatt explained that because plaintiff had been treated conservatively with physical therapy and anti-inflammatory medication but continued to have pain, an epidural steroid injection was the next course of treatment. Plaintiff underwent two injections, which decreased plaintiffs pain. Dr. Wyatt opined that the fall at the carwash either caused or aggravated plaintiffs L4-5 disc bulge.
Plaintiff introduced numerous photographs of the carwash bay into evidence. The photographs, which were taken at the time of the accident, depict water running out of a hose and ice on the ground of the bay in which plaintiff was injured. Plaintiff also introduced weather reports into evidence which showed that at 1:45 p.m. on January 7, 2014, the temperature had been below 32 degrees for over eighteen hours.
The depositions of Ron Keller, the owner of the carwash, and Justin Olwell, Mr. Keller’s employee, were introduced into evidence. Mr. Keller testified that he opened his first carwash in 1977 and presently owned six carwashes. The carwash located on Williams Boulevard at which plaintiff was injured was opened in 1997. This carwash contained an automatic freeze system. Mr. Keller explained that when the temperature dropped below thirty-two degrees, this system comes on and J^turns on the hoses of the carwash to prevent the outside hoses from freezing. The system stays on and water runs continuously until the temperature goes above thirty-two degrees. There is nothing to alert Mr. Keller or his employees when the system comes on.
Mr. Keller testified that the carwashes are closed if the temperature drops below thirty-two degrees for “an extended time.” The carwashes are not closed when the temperature drops below thirty-two degrees “for one day.” Over the course of his career as a carwash owner, he had only closed the carwashes two or three times due to cold weather.
Mr. Keller could not recall if he had visited the Williams Boulevard carwash on January 7, 2014, but if he had seen ice at the carwash, he would have closed the carwash. Mr. Keller employed Justin Ol-well to perform maintenance and repairs on the carwashes. Mr. Olwell’s job duties included checking for hazards. Ronnie Ruzzoto was employed part-time to remove the trash from the Williams Boulevard carwash. There were no records kept as to when Mr. Keller or his employees visited the carwash. Mr. Keller never went more than two days without visiting the carwash.
*347 Justin dwell testified that he had worked for Mr. Keller for eighteen or nineteen years. His job was to collect the money from the carwashes as well as to perform maintenance and repairs. There are no specific policies or procedures which he must follow with respect to his job duties. He does not visit every carwash every day. There are no records kept of when he visits which carwash. The longest period of time between his visits to each carwash is 36-48 hours.
Mr. Olwell explained that the automated freeze system circulates water through the hoses in the bays until the temperature rises above freezing. There is nothing to notify him when the automated freeze system goes on. It is not his job |fito monitor the weather for temperatures below thirty-two degrees. He did not recall ever closing the carwashes due to the presence of ice. He was never instructed to place signs to warn customers that there may be ice on the ground of the carwash.
The defense presented the testimony of Dr. John Joslyn, who was accepted by the court as an expert neuroradiologist. Dr. Joslyn reviewed the films of the MRI taken of plaintiffs low back. Dr. Joslyn opined that the MRI did not show a disc bulge at any level of plaintiffs lumbar spine. Dr. Joslyn further testified that if there was a disc bulge it would be visible on both the sagittal and axial views of the film. Dr. Joslyn identified no abnormalities or no bulging disc that would justify plaintiff undergoing epidural steroid injections. Dr. Joslyn expounded that the MRI showed an indent at the L3 level which is a common condition known as Schmorl’s node, which does not cause “any problem.”
At the conclusion of trial, the trial judge took the matter under advisement. Post-trial memoranda were submitted. On March 14, 2016,[1] the trial judge rendered judgment in favor of defendants stating “[cjonsidering the law and evidence, this Court finds that the Plaintiff has failed to meet his burden of proof and finds no liability on the part of the defendant [sic] in this case.” The trial court did not issue any findings of fact or reasons for judgment. This timely appeal followed.
LAW AND DISCUSSION
On appeal, plaintiff argues that the trial court was clearly wrong in finding no liability on the part of defendant.
IfiThe appropriate standard for appellate review in this case is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC, 14-2592 (La. 12/08/15), 193 So.3d 1110, 1115-17. It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” The Supreme Court has proclaimed a two-part test for the reversal of a factfinder’s determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Lomont v. Myer-Bennett, 14-2483 (La. 06/30/15), 172 So.3d 620, 632-33; Stobart v. State through Dep’t of Transp. and Dev., 617 *348 So.2d 880, 882 (La. 1993). Although deference to the factfinder should be accorded, the Louisiana Supreme Court has instructed that an appellate court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment rendered by the trial court. Id. Nevertheless, even though we are required to give deference to the trial court’s findings, we are not obliged to “rubberstamp” all factual determinations made by the trial court. Lomont, supra.
Upon review of the record in this case in its entirety, we find that a reasonable factual basis does not exist for the trial court’s determination that plaintiff “failed to meet his burden of proof’ and' that there is “no liability” on the part of'the defendants.
La. C.C. art. 2317 provides: “We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for 17whom we are answerable, or of the things which we have in our custody.” La. C.C. art. 2317.1 provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and. that he failed to exercise such reasonable care.
La. C.C. art. 2317.1, enacted in 1996, effectively abrogated the concept of “strict liability” in cases involving defective things and imposed a negligence standard based on the owner or custodian’s knowledge or constructive knowledge of the defect. Nicholson v. Horseshoe Ent., 46,081 (La.App. 2 Cir. 3/2/11), 58 So.3d 565, writ denied, 11-0679 (La. 5/20/11), 63 So.3d 980. To recover for damages caused by a defective thing, a plaintiff must prove that the thing was in the defendant’s custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused damage and that the defendant knew or should have, known of the defect. La. C.C. art. 2317.1. The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Baudy v. Travelers Indem. Co. of Conn., 13-832 (La. App. 5 Cir. 4/09/14), 140 So.3d 125, 131.
The law requires a plaintiff seeking to recover under La. C.C. art. 2317.1 to prove that the defendant had actual or constructive knowledge of the vice or defect. The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant’s custody. Boutin v. Roman Catholic Church of the Diocese of Baton Rouge, 14-313 (La.App. 5 Cir. 10/29/14), 164 So.3d 243, 246. Constructive knowledge can be found if the conditions that caused the injury existed for such a period of time that those Irresponsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury. Id.
Upon reviewing the record, we find that there is no evidence in the record to support the trial court’s finding that defendants are not liable for plaintiffs injury. Plaintiff introduced weather reports into evidence which showed that at 1:45 p.m. on January 7, 2014, the temperature had been below 32 degrees for over eighteen hours. The owner of the carwash, Mr. Keller, testified that this carwash contained an automatic freeze system. Mr. Keller explained that. when the temperature *349 dropped below thirty-two degrees, this system comes on and turns on the -hoses of the carwash to prevent the outside hoses from freezing. He explained that the system stays on and water runs continuously until the temperature goes above thirty-two degrees. There is no mechanism to alert Mr. Keller or his employees when the system comes on. Mr. Keller testified that Mr. Olwell’s job duties included checking for hazards, Mr. Olwell testified that he was aware that the automatic freeze system, which ran water continuously through the hoses of the car wash, came on when the temperature dropped below thirty-two degrees. Mr. Olwell testified that it was not his job to monitor the outside temperature for temperatures below thirty-two degrees. There is no evidence as to when Mr. Keller or Mr. Olwell had visited the car wash prior to plaintiffs fall. Mr. Keller testified that if he would have seen ice at the carwash, he would have closed the carwash.
The -photographs introduced into evidence show that there is water running out of the hose of the carwash onto the ground of the carwash. The photographs depict that the wall directly below the hose and the cement floor of the carwash bay in which plaintiff was injured is covered with several patches-of clear ice.
| gOur review of the evidence presented by plaintiff indicates that plaintiff met his burden of proof under La. C.C. art. 2317.1. The evidence established (1) that the car-wash at which plaintiff was injured was in Mr. Keller’s custody, (2) that the carwash contained a defect, i.e., large patches of ice on the cement floor of the carwash bay, which presented an unreasonable' risk of harm to others, (3) that this defective condition, i.e., ice, caused plaintiff to fall, and (4) that the defendant knew or should have known of the defect, i.e., the presence of ice due to the activation of the automated freeze system. La. C.C. art. 2317.1.
Even though Mr. Keller was aware that the automatic freeze system was prone to create ice during freezing weather, he did not have any means in- place to protect users of the carwash in freezing weather, such as a mandatory employee inspection system, automatic closure of the carwash, or a sign at the carwash warning users of potential icy conditions on the cement floor of the carwash. Mr. Keller was at fault in creating the hazardous condition which resulted in Mr. Louquette’s fall.
Additionally, the Supreme Court has instructed that when “documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.” Stobart, 617 So.2d at 882. In this case, the defendant, Mr. Keller, testified that his carwash had an automated freeze system, which continually ran water through the hoses of the carwash bays when the temperature was below freezing, but he was unaware that the temperature had gone below thirty-two degrees on the day of plaintiffs accident. He further testified that had he visited the carwash and noted ice on the cement floor of the carwash bays, he would have closed the carwash. [inThe pictures introduced into evidence show several large patches of clear ice on the cement floor of the carwash bay where plaintiff fell. Although the trial court did not make an explicit credibility determination, we find that the trial court erred in ignoring Mr. Keller’s duty to protect patrons to his carwash from a defect that he created by ignoring the fact that the temperature was below thirty-two degrees which activated *350 the automated freeze system thereby running water through the hoses of the car-wash bays and creating ice on the cement floor of the carwash bay.
For the foregoing reasons, we reverse the trial court judgment finding that defendants are not liable for plaintiffs fall.
Having made a determination that plaintiff carried his burden of proof under La. C.C. art. 2317.1, we must make a determination as to comparative fault under La. C.C. art. 2323.[2] When a factfin-der does not reach an issue because of an earlier finding which disposes of the case, the appellate court, in reversing the earlier finding, must make a de novo determination of the undecided issues from the facts in the record. LeBlanc v. Stevenson, 00-157 (La. 10/17/00), 770 So.2d 766, 771-72.
Factors to be considered in allocating fault pursuant to La. C.C. art 2323 include: 1) whether the conduct was inadvertent or involved an awareness of the danger, 2) how great a risk was created by the conduct, 3) the significance of what was sought by the conduct, 4) the capacities of the actors, and 5) any extenuating factors which might require the actor to proceed with haste, without proper thought. Davis v. Vosbein, 12-626 (La.App. 5 Cir. 05/16/13), 119 So.3d 100, 102.
In applying these factors, we note that plaintiff testified that he had been to his office, then visited two clients prior to going to the car wash, thus he was aware lnof the low temperature. There was no compelling reason for plaintiff to wash his car at that particular time and there was nothing to stop him from waiting for warmer weather to wash his car. Further, the pictures presented by plaintiff depict suds as well as moisture on the cement floor of the carwash bay, thus, plaintiff should have been aware that the cement floor may be slippery. Finally, plaintiff testified that he was not looking at the cement floor of the carwash bay because he was looking at the signs in the carwash. For these reasons, we find plaintiffs conduct contributed to the fall and access him 25% contributory negligence.
We now turn to a determination of plaintiffs injuries and appropriate damages. Plaintiff submitted numerous medical records into evidence. The medical records indicate that plaintiff went to the emergency room immediately after falling and reported that he “was at a carwash today” and “slipped on some ice and fell to the ground.” Plaintiff complained of pain in his head, neck and back and described his pain as 7 out of 10. X-rays were taken and there was no evidence of fracture. He was given medication for pain and released.
On January 9, 2014, plaintiff was examined by Dr. Ivo Barrone for complaints of pain in his neck, left shoulder and arm, and low back. Dr. Barrone prescribed an anti-inflammatory medication, a muscle relaxer, and physical therapy. Although plaintiff did not attend all of the physical therapy sessions as prescribed, he testified that he performed home exercises two or three times per week. The medical records reflect that plaintiffs pain continued and Dr. Barrone ordered an MRI, which was performed on March 18, 2014. The MRI was interpreted by Dr. Lawrence Glorioso as showing a bulging disc at the L4-5 level. On April 2, 2014, Dr. Barrone referred plaintiff to an orthopedist. Plaintiffs last visit with Dr. Barrone was April 30, 2014.
*351 112The orthopedist to whom plaintiff was referred, Dr. David Wyatt, examined plaintiff on April 11, 2014. Plaintiff complained of mid and low back pain, which he described as being 7 to 9 out of 10. Dr. Wyatt prescribed physical therapy, anti-inflammatory medication and a muscle relaxer. On May 23, 2014, Dr. Wyatt discharged plaintiff with instructions to return on an as needed basis.
Plaintiff again sought treatment from Dr. Wyatt for complaints of low back pain on April 24, 2015. Dr. Wyatt prescribed anti-inflammatory medication and a muscle relaxer. Plaintiff returned to Dr. Wyatt on June 4, 2015 with continued complaints of low back pain. Dr. Wyatt explained that because plaintiffs pain had not resolved with conservative treatment, he recommended an epidural steroid injection. On June 18, 2015, plaintiff underwent an epidural steroid injection at the L4-5 level for continued complaints of low back pain. Plaintiff returned to Dr. Wyatt on July 16, 2015. A second epidural steroid injection at the same site was recommended and was performed on July 31, 2015. Although the injections did not alleviate the pain completely, the medical records indicate that the pain decreased in severity.
Dr. Wyatt testified that because there was no MRI of plaintiffs back just prior to the fall, he could not say definitely that the disc bulge was caused by the fall. However, he explained that the fall either caused the bulge or aggravated the bulge. Dr. Wyatt further testified that when plaintiff returned to him in April of 2015, he reported no other intervening incidents, so he opined that plaintiff had an exacerbation of his injury from the fall.
We acknowledge that the defendants presented the testimony of a physician, hired solely for the purposes of this litigation, who opined that plaintiff did not have a bulging disc or any condition requiring epidural steroid injections. However, the general jurisprudential rule is that the testimony of a treating | ^physician is entitled to more weight than that of a physician consulted solely for the purposes of litigation. Barnes v. Bechtel Grp., Inc., 03-1484 (La.App. 5 Cir. 04/13/04), 873 So.2d 735, 738; Turner v. Delta Bev. Grp./Pepsi Am., 07-529 (La.App. 5 Cir. 11/27/07), 973 So.2d 764, 775. Based on the testimony of Dr. Wyatt, we find that plaintiff proved that he sustained an injury at the L4-5 level as a result of the slip and fall at defendant’s carwash.
When the trial court has made no award for damages because it found no liability on the part of defendant, the appellate court must make an award that is just and fair based on a de novo review of the record. See, Clement v. Carbon, 13-827 (La.App. 5 Cir. 04/09/14), 153 So.3d 460, 465. In conducting this type of de novo review, the appellate court is empowered to award an amount which represents appropriate compensation for the damages that are supported by the record. Id.
The record indicates that plaintiff injured his lower back in the fall and was treated for pain resulting from this injury for an extended period of time. Although plaintiff had undergone two epidural steroid injections for this pain, he testified at trial that he continued to experience pain. Based on our review of this record and awards for similar injuries, we find that plaintiff is entitled to $40,000 in general damages. Compare Lewis v. Jones, 11-1117 (La.App. 5 Cir. 5/22/12), 96 So.3d 559 ($40,000 general damage award aggravation of degenerative changes to spine, sporadic treatment, continued pain at trial); Ford v. Bituminous Ins. Co., 12-1453 (La.App. 3 Cir. 06/19/13), 115 So.3d 1253, 1258 ($50,000 general damage award for bulging disc and epidural steroid injections); Clement v. Carbon, supra ($30,000 award *352 for low back injury, bulging cervical disc, one injection); Sanchez v. Dubuc, 12-526 (La.App. 5 Cir. 02/21/13), 110 So.3d 1140, 1146 ($47,462 award for ruptured disc without surgery, plaintiff still had pain 27 months after the | uaccident). In addition, we award special damages of $9,594.55 for medical expenses.[3] These awards are decreased by 25% for plaintiffs comparative negligence.
CONCLUSION
We find that the trial court erred in finding plaintiff failed to meet his burden of proof and that there was no liability on the part of defendants. Given that the record is complete, after conducting a de novo review to adjudicate this matter, we find that plaintiff carried his burden to prove that he was injured when he slipped and fell on ice at a car wash owned and operated by defendant, Ron Keller. We further find that plaintiff has 25% comparative fault. Thus, we render judgment in favor of plaintiff, Lyle Luquette, and against defendants, Ron Keller and Great Lakes Reinsurance (UK), awarding Lyle Luquette $30,000.00 in general damages for past and future pain and suffering, as well as $7,195.91 in special damages.
REVERSED AND RENDERED

. On March 10, 2014 the trial court issued a judgment in favor of defendant Great Lakes Reinsurance UK PLC. The judgment was then amended at defendants' request to include that the judgment was also rendered in favor of Ron Keller. The wording of the two judgments is identical except the second judgment includes the name of Ron Keller.

. This code article requires that, in any action for damages, the degree or percentages of fault of all persons contributing to the injury shall be determined, regardless of the theory of liability. La. C.C, art. 2323.

. Plaintiffs medical bills were admitted into evidence without objection.