WINDHORST, J, h Appellant, Jennifer, Scott, appeals the trial court’s September 7, 2016 judgment granting summary judgment in, favor of appellees,. Galleria Operating Co., LLC (Galleria); Feil Organization, LLC (Feil); Feil Organization Louisiana, LLC (Feil La); Broadwall Management Corporation (Broadwall); Chubb Services Corporation (Chubb); and US, Specialty Insurance Company (US .Specialty), and dismissing appellant’s case with prejudice. For the reasons that follow, we affirm. Facts and Procedural History On May 16, 2014, appellant was an employee of Louisiana Singles, Inc., which had offices on the 23rd floor of the Galleria office building (The Galleria) located at 1 Galleria Boulevard in Metairie. When appellant arrived for work, she parked on the second floor of the parking garage adjacent to The Galleria. Appellant was dressed in her usual ■ business attire: blouse and pants, purse on her left shoulder, and shoes with a two inch heel. Appellant exited her vehicle and started walking toward the elevator lobby entrance on the second floor of the parking garage. As appellant was .walking, the heel of her right shoe went into a “hole” that was present in the concrete surface. As a result, she fell,and allegedly sustained injuries to her right shoulder and neck, with scrapes and bruising to her right knee and right forearm. Appellant filed a petition for damages against appellees contending that she sustained damages as a result of appellees’ negligence in failing to warn of or remedy a hazardous condition in the parking garage. On February 19,' 2016, appellees filed a motion for summary judgment contending that: (1) the alleged defect did not present an unreasonable risk of harm; and (2) appellees did' not have actual or constructive notice of the alleged defect’ prior to the incident. After a contradictory hearing, the-trial court granted appellees’ | amotion for summary judgment and dismissed appellant’s case with prejudice. This appeal followed. ' Discussion Appellate courts review the granting of a summary judgment de novo using the same .criteria governing the trial court’s consideration of whether summary judgment is appropriate. Duncan v. U.S.A.A. Ins. Co., 06-363 (La. 11/29/06), 950 So.2d 544, 547; Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 07/05/94), 639 So.2d 730, 750. Summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. O.C.P. art. 966 A(3). La. C.C. art. 2317.1 governs negligence claims against the owner or custodian of property. La, C.C. art. 2317.1 provides: The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, .vice, or defect which caused the damage, that the damage could, have been prevented by the exercise of reasonable care, and that-he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Thus, to impose liability for ah unreasonably dangerous defect, a plaintiff must show that: (1) the thing was in the defendant’s custody or control, (2) the thing had a vice or defect that presented an unreasonable risk of harm, (3) the defendant knew or should have known of the unreasonable risk of harm, and (4) the damage was caused by the defect. Vail v. Schiro Bros. Shoe Store, Inc., 16-47 (La. App. 5 Cir. 05/12/16), 193 So.3d 342, 347; Wiltz v. Floor & Decor Outlets of Am., 15-516 (La. App. 5 Cir. 02/24/16), 186 So.3d 1204, 1208. If the plaintiff fails to prove any one of these elements, the claim fails. Dauzat v. Thompson Const. Co., Inc., 02-989 (La. App. 5 Cir. 01/28/03), 839 So.2d 319, 322. | ¡^Constructive knowledge imposes a reasonable duty to discover apparent defects under the defendant’s custody. Luquette v. Great Lakes Reinsurance (UK) PLC, 16-422 (La. App. 5 Cir. 12/21/16), 209 So.3d 342, 348. Constructive knowledge can be found if the conditions that caused the injury existed for such a period of time that those responsible, by exercise of .ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury. Boutin v. Roman Catholic Church of the Diocese of Baton Rouge, 14-0313 (La. App. 5 Cir. 10/29/14), 164 So.3d 243, 246. On appeal, appellant contends that the trial court erred in granting appellees’ motion for summary judgment. Appellant claims that the trial court erred in finding that (1) appellees did not have a duty to know, in the exercise of reasonable care, of defects in the premises which presented an unreasonable risk of harm to others; (2) there were no genuine issues of material fact with regard to the nature of the defects and hazardous conditions present in appellees’ premises; and (3) appellees did not have actual or constructive notice of the defects and hazardous conditions present in - its premises. Because we find that appellees established that appellant could not show that appellees had actual or constructive notice of the alleged defect or hazardous condition, we pretermit appellant’s arguments regarding appellees’ duty, whether a defect existed, and if a defect.existed, whether'the defect created an unreasonable risk of harm.[1] In support of the motion for summary judgment, appellees attached the affidavit of The Galleria’s administrative assistant, Steven A, Wesselman, appellant’s deposition, and appellant’s answers to interrogatories. In his affidavit, Mr. Wesselman stated that “Security officers and engineers personally walk through and inspect the property ah average of three (3) times a |4day.” The inspection included a general inspection to identify potential hazards. He also stated that the parking garage has a parking Capacity for 1,964 vehicles and is approximately 675,881 square feet. Mr. Wesselmán stated that prior to appellant’s accident, The Galleria (1) had no prior knowledge ór notice of an alleged defect in the area where appellant claimed she fell; (2) did not receive any reports of an alleged defect in the area where appellant claimed she fell; (3) did not have any employees that created the alleged hazard; (4) has employees whose primary responsibility is to patrol the property to report and correct hazards, and perform miscellaneous general security and maintenance duties; (5) commissions regular inspections, maintenance, and necessary repairs to the premises throughout The Galleria property, including the parking garage; (6) has several trained security officers who are on the property at any given time, roaming the common areas, including the parking garage, and reporting any problem areas which come to their attention; (7) has no records of incidents, defects, or repairs in the area of appellant’s alleged fall for six months prior to this incident; (8) did not receive any reports of an alleged defect in the area where appellant allegedly fell; and (9) has not had any similar incidents reported regarding the area appellant allegedly fell since this incident. In her deposition, appellant testified that she had parked on the second floor, in the area where the accident occurred, more than once or twice. She could not recall the exact path she took from her car to the elevator on the day of the accident, but she remembered “crossing the yellow section”[2] and two holes were present in that area. She testified that she had walked over the area in question more than once or twice, but could not say if it was a dozen times, and that she had never seen the holes before she fell. Appellant did not explain why she did not see the holes before she fell. She did admit that she was not aware of anyone else who had fallen in the | Bhole, nor could she say how long the hole had been there prior to her accident. She further admitted that she did not know if appellees knew about the existence of the hole prior to her accident. In answers to interrogatories, appellant stated that she had previously walked across the area where the incident occurred and acknowledged that this was the only time there was a hole between her car and the elevator. She did not know anyone who knew about the defect prior to her accident and she did not know anyone who had slipped or injured themselves as a result of the defect. She did not notice the defect until she was injured. In opposition to appellees’ motion for summary judgment, appellant attached her own affidavit, an affidavit of her expert regarding whether there was a defect in the parking garage, excerpts from Mr. Wesselman’s deposition, and excerpts from Matt Nancy’s[3] deposition. Appellant’s affidavit and her expert’s affidavit did not address the issue of notice or the length of time the defect was present. The excerpts from Mr. Nalley’s deposition did not discuss or show that appellees had notice of the defect and that it was present for a sufficient period of time. Appellant argued that the excerpts from Mr. Wesselman’s deposition established that appellees had constructive notice of the defect and his deposition testimony contradicted his affidavit. We disagree. Upon our de novo review of the parties’ pleadings and the evidence admitted, we find that appellees established that that there was an absence of evidence which would show that appellees had actual or constructive notice of the alleged defect (ie., hole) in the parking garage. Nor was there evidence of the length time the alleged defect existed, which is an essential element of appellant’s claim against appel-' lees. The burden shifted to appellant to show that appellees knew or should | fihave known of the alleged defect. We conclude, as did the trial court, that appellant did not meet her burden. Therefore, we find that appellees were entitled to summary judgment as a matter of law. Conclusion For the reasons stated above, we affirm the trial court’s September 7, 2016 judgment. AFFIRMED , The trial court stated, "While the court is not opining on whether it's presenting an unreasonable risk of harm, I’m simply going to Subsection 2, that the defendant knew or should have known of the vice or defect,” . Referred to as "crosshatched” in yellow stripes throughout the deposition by the attorney for appellees. . Matt Ñalley was the employee of appellees who filled, in the hole with a small amount of Quikrete material and some water to repair the "holes.”