| iWICKER, Judge.
This appeal arises from a petition for damages filed on behalf of Renee L. Lemoine, *1195 and her husband, Henry J. Lemoine, Jr. These plaintiffs/appellants sued individually and as well as administrators of the estates of the minor children: Troy J. Mayeaux, Courtney L. Lemoine, and Brandy R. Lem-oine for injuries allegedly sustained by Renee L. Lemoine when her right foot went into a water meter hole. The plaintiffs/appellants filed suit against the homeowners, Lydia Daunis wife of/and Lonnie E. Ross, and their insurer, State Farm Fire & Casualty Company. They also sued Jefferson Parish Department of Water (the Parish). Lemoine’s employer’s worker’s compensation insurer, Insurance Company of North America, intervened. Plaintiffs dismissed their claims against the homeowners and their insurer. The trial judge dismissed plaintiffs’ claims against the Parish on the basis the Parish had no notice of a defect. He also found victim fault. Renee L. Lemoine and Insurance Company of North America now appeal. We affirm.
Lemoine testified that on January 26,1991 she fell into a hole as she was leaving the home of Mr. and Mrs. Ross. She went to their home, as she had previously done, in order to collect money for insurance. As she walked on a grassy area between the sidewalk and the street her right foot fell into a hole. She fell forward, striking her right knee against a water meter cover. She then fell backwards. Lemoine testified she did not see the hole because the area was covered with leaves. She did not know if the water meter cover was on the water meter box but explained that if the cover had been there she would not have fallen in. She did note, however, that after the accident the cover was not on the box.
_[2_Lemoine admitted she was not good at judging distance but testified that the metal rim which surrounded the hole was about six or eight inches below the ground. After she fell she noticed the water meter was not level.
Within an hour of the accident she contacted Gail Sisung, a co-employee, for the purpose of taking pictures of the area. Sisung had never been to that location before. She testified Lemoine told her that when she stepped on top of the water meter the cover to the water meter gave and Lemoine stepped into a hole.
Sisung stated that when she arrived at the location the cover was tilted partially off the meter box. There were leaves around the meter. She guessed the water meter was six to eight inches below ground level.
Four of the pictures taken by Sisung contain a stick which Lemoine placed in the hole in order to show there was a hole. However, neither Sisung nor Lemoine knew the length of the stick. Sisung also did not know the depth of the meter box.
Sisung opined she could see how Lemoine hurt herself since the hole was covered with leaves. Sisung further stated there was a metal easing surrounding the water meter hole. She did not measure the distance of the casing from ground level but assumed it was six to eight inches below the ground.
Marcel McCormick testified he is employed by the Parish as a water meter reader. It was stipulated McCormick last read that meter December 26, 1990, one month before the accident. He had no independent recollection of the meter.
As a meter reader he cheeks for problems with covers, the sitting of the cover, and whether the meter box is below grade or sunken. When he reads meters he always replaces the cover by stomping on it to make sure it is on the box.
If the cover doesn’t fit properly or if the meter is below grade he would note it in a computer-type device he carries. “Below grade” means it would be down too low and someone could trip on it. In his judgment a meter sunken only two inches below grade would not be a reportable hazard. He did not think that in the eight years he has been reading meters he has seen one sunk four to six inches in 60 days. If the meter were down 13low he would report that as a safety hazard. As far as he knew he never reported any problem with this meter.
On cross-examination he was asked to look at photographic exhibit number Five. He identified the meter box. He identified the “X” marked in the picture as the meter box. Based on this picture he would not have *1196 reported a sinking problem as alleged. He denied that the portion marked “X” was a shadow east from a leaf as opposed to a meter box. Neither Lemoine nor Sisung could tell whether the “X” was the rim of the meter box. McCormick also identified the cover to the meter box. It looked like the cover was off the meter box.
Randy P. Schuler, Director of Jefferson Parish Waterworks, testified one of his duties involves maintenance and repair of meters. The water meters, both cover and box, are the property of Jefferson Parish. Meters are read approximately every 60 days. When read safety hazards or defects are noted on a work order and problems are then corrected. If a water meter has sunk two inches or more a report for a correction would be made. Water meters are capable of holding and withstanding a person’s weight.
Schuler testified when he checked the record of this meter for any work order back to one-and-a-half years prior to the lawsuit he found none. He was not aware of any defect in either the cover or the box of this meter.
Schuler was shown the photographs taken by Sisung and asked to give his impression whether the meter was two inches below grade. He explained failure to cut grass for two or three months results in grass buildup. The buildup would give the appearance the meter was below grade. He concluded the determination of whether the box was below grade could not be made from the pictures. He also had no knowledge of any investigation of this box after the accident.
Appellants specify the following errors on appeal:
1. The trial judge erred in failing to find notice to the Parish.
2. The trial court erred in failing to find the Parish had the burden to exculpate itself from fault, and had not done so.
143. The trial court erred in finding victim fault when the record contains no evidence from which victim fault could even be surmised.
The trial judge concluded the Parish had no notice of a defect or vice at the meter. He also found victim fault but did not explain the facts upon which he based that finding. Our review of the record supports the trial judge’s conclusion the Parish had no notice of a defect or vice. Since we find ample evidence to support the trial judge’s conclusion in this regard we need not address the issue of whether he correctly found victim fault.
We note that appellant argues in her second specification of error the burden of proof used in slip and fall cases in a retail setting should be applied to this situation. In particular, she contends once the plaintiff proves a fall caused by a foreign object the burden shifts to the defendant to exculpate itself.
We find no merit to this argument since the legislature has clearly enunciated the standard for imposing liability on a “public entity” in La.R.S. 9:2800 as follows:
Section 2800. Limitation of liability for public bodies
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has faded to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. “Public entity” means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, in-strumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdi *1197 visions. Public entity also includes housing authorities, as defined in R.S. I s40:382(l), and their commissioners and other officers and employees.
The statute, which was added by Acts 1985, No. 454, § 1, effective July 12, 1985 applies to the Parish as a “Public Entity.” Thus, under La.R.S. 9:2800 in order “to prevail in either negligence or a strict liability theory, the plaintiff [has] to show actual or constructive knowledge of the defect by the public entity.” Boudoin v. City of Kenner, 556 So.2d 123, 125 (La.App.5th Cir.1990). We have recently applied the general principle stated in Boudoin to a ease involving an alleged defective meter or cover in Michael Salone v. Jefferson Parish Department, 94-212, 645 So.2d 747 (La.App.5th Cir. 10/12/94).
We find no manifest error in the trial judge’s conclusion the Parish had no actual nor constructive notice of the defect which caused the damage. La.R.S. 9:2800; Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the present case there was no evidence the uncovered meter hole existed for a longtime or that the meter reader had knowledge of a defect. The only witness to testify to the actual accident was Lemoine herself. She stated that if the cover to the meter box had been there she would not have fallen in. Thus, even if the meter box was sunken six to eight inches it was the absence of a cover on the box which caused her to step into the box and fall. The lack of a cover as the cause of the accident was further supported by Sisung’s testimony. She stated the cover was partially off the meter.
The trial judge correctly concluded the Parish had no notice of a defective cover nor of a hazard in a sinking meter.
The trial judge stated photographic exhibit number Five was not a good picture. We agree. Additionally, the remaining photos are also unclear since the relationship of the box to the surrounding features is not depicted. The parties enlarged photographic exhibit number Five. However, this photo is still unclear.
The trial judge, confronted with vague photographs, evidently weighed the testimony of the witnesses and made a credibility determination.
1 ¡Appellant argues that the case of Tracy v. Jefferson Parish, 523 So.2d 266 (La.App.5th Cir.1988), writ denied, 530 So.2d 569 (La.1988) is an identical sunken meter situation in which liability was imposed. We disagree.
In Tracy the trial judge found evidence the cause of the accident was a defect in that the lid was not properly seated due to grass growth between the lid and meter box. Id. at 272. There was testimony a below grade box would contribute to grass growing in the box between the lid and the housing. The record is devoid of evidence in this case that grass was growing in the box making for an improper fit with the cover.
Accordingly, for the reasons stated the judgment is affirmed.

AFFIRMED.