CHEHARDY, C.J.
Plaintiff, Candido Perdomo, appeals the district court's July 5, 2017 judgment granting summary judgment and dismissing with prejudice Mr. Perdomo's claims against defendants, City of Kenner and Veolia Water North America-South, LLC. After our de novo review, we find plaintiff is entitled to relief, reverse the judgment of the district court, and remand the matter for further proceedings.
FACTUAL AND PROCEDURAL HISTORY
On March 25, 2011, Mr. Perdomo filed suit against the City of Kenner and Veolia Water North America-South, LLC seeking damages for injuries he sustained on May 11, 2010 while employed by Ramelli Janitorial Service as a garbage "hopper" collecting garbage for the City of Kenner.[1] Mr. Perdomo was injured when a portion of the concrete surface on 27th Street near the intersection of Salem Street collapsed underneath the right rear wheels of the garbage truck on which he was riding.
Following discovery, Kenner and Veolia moved for summary judgment, arguing that Mr. Perdomo could not succeed on his cause of action because he could not satisfy his burden of proving the element of notice[2] as required by La. R.S. 9:2800 and *986 La. C.C. art. 2317. In support of its motion for summary judgment, Kenner submitted an affidavit of Jerry Dillenkoffer, the Assistant Director of Public Works for the City of Kenner, and an affidavit of Joanne Massony, a project manager with Veolia. Similarly, Veolia submitted in support of its motion the Massony and Dillenkoffer affidavits, a deposition of Ms. Massony, and a deposition of Dennis Dufour, a maintenance manager with Veolia.
In support of his opposition to Kenner and Veolia's motions for summary judgment, Mr. Perdomo submitted the Massony and Dufour depositions, a deposition of Mr. Dillenkoffer, a July 2009 newspaper article, an affidavit and deposition of Scott Troxclair, as well as affidavits of Josette White, Alisha Hamilton, Natalie Thomas, and Terri Williams.
In Mr. Dillenkoffer's affidavit and deposition, he explained that along with the Kenner Police Department, the Weights and Standards Division of the Department of Public Safety investigated the scene of the accident. Through this investigation, it was determined that the rear axle of the garbage truck was overweight by 4,700 pounds.
Mr. Dillenkoffer, through his inspection of the scene, observed a leaking sewer line that he believed caused the street's collapse. Mr. Troxclair, a plumber retained by plaintiff, also examined the scene of the accident and similarly opined that the leaking sewer line had eroded the subsurface of the street and led to its collapse. He inferred from the extent of the subsurface erosion that the leak must have been ongoing for quite some time.
Mr. Dillenkoffer explained that the Kenner Department of Public Works does not have a plan for periodic inspections of public streets and the department relies on citizen complaints as the primary means of identifying issues with infrastructure. Prior to the accident, Mr. Dillenkoffer was not aware of any complaints of potholes, sinkholes, or any other issues with the surface of 27th Street at this location. He also attested that city complaint logs do not reflect any complaints about the condition of the street or sewerage near the accident site.
Mr. Dillenkoffer further stated that the department did not operate or maintain the Kenner sewerage system in 2010, as Veolia was under contract to operate and maintain the Kenner sewer system since 1995.
In the affidavit and deposition of Joanne Massony, a project manager with Veolia, Ms. Massony explained that Veolia had received no complaints of potholes, sinkholes, or any sewerage-related issues at the 27th Street location prior to the accident. Ms. Massony added that Veolia routinely inspects the sewerage lift stations throughout Kenner on a weekly basis. This accident occurred immediately adjacent to Lift Station No. 4341. The weekly inspections of this lift station did not reveal anything to suggest that the system was in disrepair or was creating a condition that would compromise the structural integrity of the street surface. In fact, Dennis Dufour of Veolia confirmed that the weekly inspection of Station 4341 was completed the day before the accident, on May 10, 2010. This inspection revealed no problems with the system. The lift stations are also outfitted with a wireless notification system designed to provide real-time diagnostics on the stations. This system never alerted Veolia to any potential issues with Station 4341 prior to the accident.
Regarding a leaking sewer line, Ms. Massony explained that "the only way" Veolia would discover such a leak would be "through people calling or visually seeing *987 ...subsidence" that would prompt Veolia to further investigate and test for leaks.
Ms. Massony added that impellers on one of the pumps in Station 4341 had been replaced in February 2010 due to normal wear and tear. At the time of this replacement, there were no observations of any potential problems or subsurface conditions that suggested the street was susceptible to collapse.
Ms. Massony also explained that in June 2005, Veolia received a request from the Department of Public Works to inspect a sewer line on 27th Street because subsidence had been observed on the opposite side of the street from the accident site. Veolia's inspection revealed no issues with the sewer line, but it was determined that a potable water line, a responsibility of Jefferson Parish, was a contributing factor to the subsidence. Repairs were made at that time.
The July 2009 newspaper article offered by Mr. Perdomo reported the commencement of an infrastructure project to rebuild Kenner's sewer system because, as the newspaper quoted Deputy Chief Administrative Officer, Prat Reddy, "We have reached a sewerage crisis in Kenner[.]" Allan Katz, Kenner Ready to Embark on $15 Million Phase I Rebuilding of Sewage System , Kenner Star, July 2009, Vol. 18 No. 7, at 1.
Ms. White, Ms. Hamilton, Ms. Thomas, and Ms. Williams all resided near the site at the time of the accident. They all stated in their affidavits that the ground adjacent to the street near the accident site had been "soggy" prior to the accident, and all except Ms. Hamilton reported foul sewage odors emanating from the area around the site before the accident. Along with her complaint about sewage odors, Ms. White had also lodged a complaint with the City of Kenner about the backup of sewage in her home.
Ms. Massony acknowledged that Veolia had received several odor complaints from residents near the accident site, but that no issues were found with the sewerage system during the inspections made in response to these complaints. Mr. Troxclair explained in his deposition that even properly operating lift stations commonly emit sewage odors. Ms. Thomas and Ms. Williams further recounted that a large crack in the street surface had formed near the site, and Ms. Thomas recalled that it had been patched on two occasions prior to the accident.
At the conclusion of the hearing on the motions for summary judgment on June 19, 2017, the district court granted summary judgment in favor of Kenner and Veolia. The court found that Mr. Perdomo could not prove the notice element of his claim. In the signed judgment that followed on July 5, 2017, the court granted summary judgment in favor of Kenner and Veolia and dismissed with prejudice Mr. Perdomo's claims against these defendants.
On July 17, 2017, Mr. Perdomo filed a motion for new trial, arguing that the court's judgment was contrary to the law and evidence. Following a hearing on August 18, 2017, the district court denied this motion in a judgment dated September 19, 2017. Mr. Perdomo appeals the district court's judgments of July 5, 2017 and September 19, 2017.
DISCUSSION
On appeal, Mr. Perdomo raises two assignments of error: (1) the district court erred in granting defendants' motions for summary judgment and in denying plaintiff's motion for new trial; (2) the district court erred in dismissing plaintiff's claims of general negligence under La. C.C. art. 2315 against Veolia.
*988 ASSIGNMENT OF ERROR ONE
In support of Mr. Perdomo's first assignment of error on appeal, he submits three arguments. First, Mr. Perdomo argues that summary judgment as to Veolia was improper because La. R.S. 9:2800 does not apply to Veolia as a private company. Second, he argues that summary judgment was improper because both defendants had actual and constructive knowledge[3] of the alleged defect. And third, he argues that the doctrine of res ipsa loquitur precluded summary judgment in this case.
We address Mr. Perdomo's first and third arguments before addressing his second argument in our de novo review of the district court's granting of defendants' motions for summary judgment.
Mr. Perdomo argues that La. R.S. 9:2800 does not govern Veolia's liability because Veolia, a private company, is not a "public entity" as defined in La. R.S. 9:2800(G)(1).[4] La. R.S. 9:2800(A) provides in pertinent part: "A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody."
La. C.C. art. 2317 provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
And La. C.C. art. 2317.1 provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
We decline to decide whether Veolia qualifies as a "public entity" for purposes of La. R.S. 9:2800 because even if La. R.S. 9:2800 does not govern Mr. Perdomo's claim against Veolia, Mr. Perdomo is not relieved of proving notice on the part of Veolia to succeed on his cause of action under La. C.C. art. 2317 and 2317.1. See Luquette v. Great Lakes Reinsurance (UK) PLC , 16-422 (La. App. 5 Cir. 12/21/16), 209 So.3d 342, 348, writ denied , 17-136 (La. 3/13/17), 216 So.3d 806 ("The law requires a plaintiff seeking to recover under La. C.C. art. 2317.1 to prove that the defendant had actual or constructive knowledge of the vice or defect.").
Mr. Perdomo also argues that his suit against Veolia should not have been dismissed because his general negligence theory of recovery under La. C.C. art. 2315 remains. We find no merit to this argument because, as the following demonstrates, regardless of whether Mr. Perdomo couches his cause of action under La. C.C. art. 2315 or La. C.C. art. 2317.1, he *989 still must prove the element of notice. See generally Myers v. Dronet , 01-5 (La. App. 3 Cir. 6/22/01), 801 So.2d 1097 (discussing custodial liability within the broader framework of Louisiana tort law).
For instance, considering Mr. Perdomo's claim in the "duty-risk" parlance of La. C.C. art. 2315, the owner or custodian of property has a duty to keep the property in a reasonably safe condition. Pryor v. Iberia Par. Sch. Bd. , 10-1683 (La. 3/15/11), 60 So.3d 594, 596. This duty requires the owner or custodian to discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence. See id. "This duty is the same whether based on custodial liability under La. C.C. arts. 2317, 2317.1, and 2322, or negligence under La. C.C. art. 2315." Cheramie v. Port Fourchon Marina, Inc. , 16-895 (La. App. 1 Cir. 2/17/17), 211 So.3d 1212, 1215, writ denied , 17-499 (La. 5/12/17), 221 So.3d 73. Under either theory, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the "custody" of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause in fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. Id.
Mr. Perdomo's next argument that summary judgment was precluded by application of res ipsa loquitur is presented in his brief as follows:
Citizens operating a motor vehicle on a roadway should have an expectation that the roadway will not suddenly collapse and cause them injury. In this case that is exactly what happened. The evidence shows that a sewer line below the roadway failed and in turn caused the road to collapse. While the reason it failed may be a question of fact, it makes no difference in the Court's evaluation to determine that Summary Judgment is not appropriate. No expert is needed to tell a jury that a road just doesn't collapse.
This argument appears to have been adopted from Judge Leon Cannizzaro's concurring opinion in the Louisiana Fourth Circuit decision, Craft v. Sewerage & Water Bd. , 03-1886 (La. App. 4 Cir. 4/28/04), 874 So.2d 908, writ denied , 04-1276 (La. 9/24/04), 882 So.2d 1134. In Craft , the Fourth Circuit affirmed a judgment against the New Orleans Sewerage and Water Board, awarding damages to the plaintiffs who were injured when the roadway underneath their vehicle collapsed due to a defective sewer line. A majority found that the plaintiffs had borne their burden of proving the notice element with evidence that the S & WB had received complaints about the sewer leak and about subsidence. Craft , 874 So.2d at 911. In a concurring opinion, Judge Cannizzaro disagreed with the majority that the S & WB had notice of the defect, but nonetheless concluded that the S & WB was liable for the damages based on the doctrine of res ipsa loquitur. He explained:
I concur with the result in the majority opinion, but I do not think that the evidence shows that the Sewerage & Water Board (the "S & WB") had notice of the problem that caused the accident in this case. In my opinion the evidence shows that the condition that caused the accident arose so suddenly that the S & WB could not have been notified of the condition. Although the S & WB had been notified of other matters regarding its sewer line, the evidence demonstrates that these matters were unrelated to the cause of the accident in this case.
*990 The fact that the S & WB did not have notice of the condition that caused the accident should not, however, preclude recovery by the plaintiff. The doctrine of res ipsa loquitur is applicable to this case, and the notice requirement under La. R.S. 9:2800 is, therefore, irrelevant. La. R.S. 9:2800 expressly refers to La. C.C. art. 2317, and La. C.C. art. 2317.1 provides the "nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur."
Citizens lawfully operating a motor vehicle on a roadway should have an expectation that the roadway will not suddenly collapse and cause them injury. In this case that is exactly what happened. The evidence shows that a sewer line below the roadway failed unexpectedly and without any warning, causing the roadway's sudden collapse. It is nonsensical to require that the S & WB receive prior notice of such a condition before an injured citizen, who is free from fault, can recover damages. Fortunately, the legislature has provided for just such a situation by sanctioning the use of the doctrine of res ipsa loquitur, where applicable, in situations subject to La. R.S. 9:2800 and La. C.C. art. 2317.
Craft , supra at 913, (Cannizzaro, J., concurring).
Res ipsa loquitur (literally, "the thing speaks for itself") is a rule of circumstantial evidence which allows an inference of negligence on the part of the defendant if the facts indicate the defendant's negligence, more probably than not, caused the injury. Sandifer v. City of Kenner , 17-58 (La. App. 5 Cir. 05/31/17), 221 So.3d 307, 318. It applies in cases involving circumstantial evidence, rather than direct evidence, provided the plaintiff establishes the following foundation of facts: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence; (2) the evidence sufficiently eliminates other possible causes of the injury, such as the plaintiff's own responsibility or the responsibility of others; and (3) the alleged negligence of the defendant must fall within the scope of his duty to the plaintiff, which will often be the case if the defendant had exclusive control of the thing or situation that caused the injury to the plaintiff. Id.
To the extent that Mr. Perdomo argues, as set forth in Judge Cannizzaro's concurring opinion, that the application of res ipsa loquitur relieves plaintiff of his burden of proving the notice element, we reject this as a misstatement of the law. The law is well-settled that application of res ipsa loquitur "does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery." Sandifer , supra ; Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr. , 564 So.2d 654, 666 (La. 1990). Accordingly, Mr. Perdomo cannot rely on the doctrine of res ipsa loquitur to obviate his burden of proving the element of notice.
In any event, we find that res ipsa loquitur is not otherwise applicable to the present case. "Res ipsa loquitur only applies where direct evidence of defendant's negligence is not available to assist the plaintiff to present a prima facie case of negligence." Linnear v. CenterPoint Energy Entex/Reliant Energy , 06-3030 (La. 9/5/07), 966 So.2d 36, 42. Here, direct evidence was offered bearing on the element of notice. Representatives of Kenner and Veolia attested that no complaints were received regarding a sewer leak or subsidence. Nor did inspections, both routine and pursuant to odor complaints, reveal any conditions indicative of possible street collapse. And Mr. Troxclair opined that an ongoing sewer leak caused the street's collapse.
*991 This direct evidence precludes application of res ipsa loquitur .
Finally, turning to Mr. Perdomo's argument that both Kenner and Veolia had constructive and/or actual notice of the alleged defect, we consider this in our de novo review of the district court's granting of summary judgment.
A judgment granting a motion for summary judgment is reviewed de novo . Luft v. Winn Dixie Montgomery, LLC , 16-559 (La. App. 5 Cir. 2/8/17), 228 So.3d 1269, 1272. Under this standard, we use the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue as to material fact and whether the mover is entitled to judgment as a matter of law. Id.
"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Lincoln v. Acadian Plumbing & Drain, LLC , 17-684 (La. App. 5 Cir. 5/16/18), 247 So.3d 205, 209. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id.
"[I]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966(D)(1). "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." Id.
Here, Kenner and Veolia are the movers who will not bear the burden of proof at trial. Accordingly, in their motions for summary judgment, Kenner and Veolia sought to point out the absence of factual support for one of the essential elements of Mr. Perdomo's claim: notice.
La. R.S. 9:2800 provides in pertinent part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
* * *
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
D. Constructive notice shall mean the existence of facts which infer actual knowledge.
In order to recover under this statute, a plaintiff must prove that: (1) the public entity had custody of the thing that caused the plaintiff's injuries or damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) the public entity had actual or constructive knowledge of the defect and did not take corrective measures within a reasonable time; and (4)
*992 the defect in the thing was a cause-in-fact of the plaintiff's injuries. Pitre v. Jefferson Par. Hosp. Serv. Dist. No. 2 , 16-361 (La. App. 5 Cir. 12/28/16), 210 So.3d 502, 506, writ denied , 17-150 (La. 3/13/17), 216 So.3d 802. To recover, the plaintiff bears the burden of proving all these inquiries in the affirmative and failure on any one is fatal to the case. Id.
Similarly, to recover under La. C.C. arts. 2317 and 2317.1, the plaintiff must prove that the defendant had actual or constructive knowledge of the defect. Luquette , supra .
Actual notice under La. R.S. 9:2800 and La. C.C. art. 2317 has been found in cases where complaints about the injury-causing defect were received by the proper authorities. See Craft , supra ; Priest v. City of Bastrop , 34841 (La. App. 2 Cir. 7/11/01), 792 So.2d 80, 83 ; Hanson v. Benelli , 97-1467 (La. App. 4 Cir. 9/30/98), 719 So.2d 627, 636. Constructive notice, on the other hand, is defined in La. R.S. 9:2800(D) as "the existence of facts which infer actual knowledge."[5] Generally, constructive notice can be found if the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury. Pitre , supra ; Luquette , supra .
In support of their contention that they had neither actual nor constructive notice, defendants submitted Mr. Dillenkoffer's testimony that the Kenner Department of Public Works had not received any complaints regarding the street condition of 27th Street. Defendants also submitted the affidavits and depositions of Veolia representatives, Ms. Massony and Mr. Dufour, whose testimony established that through Veolia's routine inspections, including one on the day before the accident, and inspections conducted in response to odor complaints, Veolia did not find any issues with the sewerage system, or any other conditions to suggest the possibility of street collapse.
In support of Mr. Perdomo's opposition, he submitted the testimony of Mr. Troxclair and Mr. Dillenkoffer, who both opined that the collapse was caused by a leaking sewer line. And Mr. Troxclair explained that the extent of the subsurface erosion led him to believe that the leak had been ongoing for quite some time.
With Mr. Troxclair's testimony, we find Mr. Perdomo has presented factual support sufficient to establish the existence of a genuine issue of material fact on the element of notice. We find that reasonable persons could reach differing conclusions as to whether Veolia and Kenner had constructive notice of the subsurface leak, i.e. , whether it existed for such a period of time that, by the exercise of reasonable care, they should have known of its existence.
We therefore conclude upon our de novo review that the district court erred in granting summary judgment in favor of *993 Veolia and Kenner. Given that summary judgment was granted on the element of notice, the parties did not argue and the district court did not rule on the issue of whether and to what extent both Kenner, as the owner of the sewerage system, and Veolia, as the subcontractor charged with the operation and maintenance of the system, may be liable under La. R.S. 9:2800, La. C.C. art. 2317, and La. C.C. art. 2317.1. This issue must also be resolved through further proceedings in the district court.
Because we reverse the district court's July 5, 2017 judgment, we also vacate the district court's September 9, 2017 judgment denying Mr. Perdomo's motion for new trial.
ASSIGNMENT OF ERROR TWO
Although Mr. Perdomo assigns as error the district court's dismissal of his claim of general negligence under La. C.C. art. 2315 against Veolia, he does not brief this assignment of error. Accordingly, pursuant to Rule 2-12.4(B)(4) of the Uniform Rules of Louisiana Courts of Appeal, this assignment of error is abandoned and is not considered by this Court. See Khoobehi Props., LLC v. Baronne Dev. No. 2, L.L.C. , 16-506 (La. App. 5 Cir. 3/29/17), 216 So.3d 287, 300, writ denied , 17-893 (La. 9/29/17), 227 So.3d 288.
DECREE
For the foregoing reasons, we reverse the district court's July 5, 2017 judgment granting summary judgment in favor of the City of Kenner and Veolia Water North America-South, LLC and dismissing with prejudice Mr. Perdomo's claims against these defendants. We also vacate the district court's September 9, 2017 judgment denying Mr. Perdomo's motion for new trial. This matter is remanded for further proceedings.
REVERSED; REMANDED

In its responsive pleading, Kenner filed a third party demand against Ramelli Janitorial Service that is not before us in this appeal.

The jurisprudence refers to this element interchangeably as "notice" and "knowledge." This opinion also uses these terms interchangeably.

See n.2, supra .

La. R.S. 9:2800(G)(1) provides:
"Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions. Public entity also includes housing authorities, as defined in R.S. 40:384(15), and their commissioners and other officers and employees and sewerage and water boards and their employees, servants, agents, or subcontractors.

We note the misuse of "infer" in La. R.S. 9:2800(D). As explained in Fowler's Modern English Usage :
This misuse of [infer] for imply is sadly common-so common that some dictionaries give imply as one of the definitions of infer without comment. But each word has its own job to do, one at the giving end and the other at the receiving (What do you imply by that remark? What am I to infer from that remark? ) and should be left to do it without interference.
E. Gowers, Fowler's Modern English Usage 282 (2d ed. 1965) (Italics original).
Accordingly, La. R.S. 9:2800(D) should read: "Constructive notice shall mean the existence of facts which imply actual knowledge;" or, "Constructive notice shall mean the existence of facts from which actual knowledge may be inferred ."