SHERRILYN DAVIS

VERSUS

CONSOLIDATED ROAD DISTRICT A FOR
THE PARISH OF JEFFERSON,
CONSOLIDATED DRAINAGE DISTRICT NO.
1 FOR THE PARISH OF JEFFERSON,
CONSOLIDATED SEWERAGE DISTRICTS
OF JEFFERSON PARISH AND
STATE OF LOUISIANA

NO. 22-C-240

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 808-142, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

October 05, 2022

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Jude G. Gravois

**WRIT GRANTED, JUDGMENT REVERSED,**
**MOTION FOR SUMMARY JUDGMENT GRANTED,**
**PLAINTIFF'S CLAIMS DISMISSED WITH PREJUDICE**
    **SMC**
    **FHW**
    **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

*Alexis Barteet*
Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
SHERRILYN DAVIS
    Pierre F. Gaudin, Jr.
    Elizabeth M. Gaudin

COUNSEL FOR DEFENDANT/RELATOR,
CONSOLIDATED ROAD DISTRICT A FOR THE PARISH OF JEFFERSON,
CONSOLIDATED DRAINAGE DISTRICT NO. 1 FOR THE PARISH OF
JEFFERSON AND CONSOLIDATED SEWERAGE DISTRICT OF
JEFFERSON PARISH
    Guice A. Giambrone, III
    Ivana Dillas

**CHEHARDY, C. J.**

On the night of July 23, 2019, while attempting to deliver groceries to her cousin who lives next door, Ms. Sherrilyn Davis allegedly slipped and fell in water and algae that she claims had collected on the sidewalk near her home on Cindy Drive in Westwego, Louisiana, from a leaking pipe. After the fall, Ms. Davis complained of pain on her left side, including in her neck, back, left arm, and left leg. Ms. Davis filed a petition for damages against Consolidated Road District A for the Parish of Jefferson, Consolidated Drainage District No. 1 for the Parish of Jefferson, and Consolidated Sewerage District of Jefferson Parish (collectively, "Jefferson Parish"), alleging that these defendants are liable for the damages she sustained in this accident.[1]

After her fall, Ms. Davis took pictures of the area. Three pictures introduced during her deposition were taken around the time that the workers began working on the alleged defect, and one of the pictures was taken the day after she fell. Ms. Davis explained that repair work began a day or two after the day that the workers came out to look at the problem:

> Q: Ms. Davis, did you take these four photographs before or after you fell on July 23, 2019?
>
> A: After.
>
> Q: How long after?
>
> A: I think it was like the next day. So I think they started working like the next two days they came out and started. Or somebody came out and looked at it the next day or two. And then I guess a couple of days after that, they came out and started working on it.
>
> Q: So you took these pictures when you noticed people starting to work on it?
>
> A: Well, I took the picture before that with the – before they started working on it. Well, I think they came out. This was the very next day somebody came out. … Yeah,

---

[1] Plaintiff's Petition for Damages also names the State of Louisiana and Beechgrove Homes, LLC d/b/a Beechgrove Claiborne Homes, as defendants, but plaintiff's claims against those defendants are not at issue here.

the guy came out to look at it. I think it could have been two days after. But then maybe they started working a couple of days after that.

***

Q:    So let the record reflect that Miss Davis is stating that Pictures 2, 3, and 4 were taken before Picture #1. Correct?

A:    Right.

Q:    But were all four photos taken after you fell?

A:    Yes.

Ms. Davis's deposition testimony further indicates that she noticed the water at that location in April 2019. A couple of weeks after discovering the potential leak, and because she is a resident of Beechgrove Homes, she notified a Beechgrove maintenance man about the issue. She never saw anyone from Beechgrove come and inspect the area, but the maintenance man later informed her that this was not an issue for Beechgrove but for the City or the Parish. Ms. Davis also stated that she never informed Jefferson Parish of the leak.

Ms. Davis stated that when she first noticed the water a few months before her fall, "it wasn't much water. It was just like water seeping up. … It was just like little bubbles that was coming up out of the ground."

Q:    … So once you informed the maintenance man of Beechgrove about the leaking, did it continue to leak?

A:    Well, I didn't really pay attention to it like that. I mean, I just noticed it then and saw the bubbles coming out of it and just told him about it because I didn't know if it was sewer water or not. So no. I mean, I come home, but I never paid attention to it.

***

Q:    But the times that you did notice it, you noticed it was still leaking?

A:    Yeah. After I told him about it?

Q:    Yes.

A:    Yeah, I've seen. Yeah, it wasn't bad or anything then.

2

Q:    Did you follow-up with anyone else at Beechgrove when you saw that it wasn't fixed?

A:    No.

The affidavit of Destiny Bratton, a Jefferson Parish Public Works business manager since 2010, states that the Parish of Jefferson owns the sidewalk and utility pipes where plaintiff allegedly slipped and fell. Ms. Bratton personally reviewed the Department's work orders, complaints, incident reports, and accident reports for the area located near Ms. Davis's home in Westwego. Ms. Bratton confirmed that the Jefferson Parish Water Department had not received any phone calls, complaints, work orders, or reports of any defective or leaking pipes in the area where plaintiff fell. On the day after plaintiff fell, however, a work order was issued to "repair service line" and to "check for a possible leak." Ms. Bratton testified that the day the work-order issued, one day after plaintiff's alleged fall, was the exact date that Jefferson Parish was notified of the leak.[2]

Jefferson Parish filed a motion for summary judgment arguing that it had no actual or constructive notice of the alleged defect, and thus it could not be held liable for plaintiff's damages under La. R.S. 9:2800 and La. C.C. art. 2317.1; that Jefferson Parish owed no duty to Ms. Davis because the alleged defect was open and obvious; and that there was no evidence that the leaking pipe created an unreasonable risk of harm.

In opposition to Jefferson Parish's motion for summary judgment, plaintiff submitted her personal affidavit stating that she saw Jefferson Parish repair workers inspect the leak *before* her fall. In her affidavit, plaintiff further contends

---

[2] The Comments page of the Jefferson Parish Public Works Water Department Work Order No. 19-21581 states that on 7/24/19, "crew had to break a 4X5 portion of the sidewalk to get to the leaking tubing. Operator had to go dump asphault [sic] from previous job and return with fresh rock & sand. After the repairs were made, they had to backfill w/ the sand and rocks. The Comments also indicate that on 7/25/19, the work was completed, but additional services were requested from the Water Dept.: "Please repair a 4X5 portion of the driveway, water OM had to repair a service line."

that two additional witnesses, Tiarra Payton and Gloria Bush, saw these workers inspecting the leak before her July 23, 2019 fall. There are no affidavits from these two witnesses to corroborate Ms. Davis's account, however.

After a hearing, the trial court denied Jefferson Parish's motion for summary judgment. Jefferson Parish filed the instant writ application seeking supervisory review of that ruling. Finding merit to Jefferson Parish's argument, we gave the parties an opportunity to provide additional briefing and to request oral argument, if desired, pursuant to La. C.C.P. art. 966 H.

DISCUSSION

In their writ application, Jefferson Parish assigns two errors in the trial court's ruling denying their motion for summary judgment. First, Jefferson Parish argues that the trial court legally erred by misapplying La. R.S. 9:2800, which mandates that a governmental entity have actual or constructive knowledge of a defect before it may be held liable. Because Jefferson Parish came forward with admissible evidence proving that it had no actual or constructive knowledge of the alleged defect before Ms. Davis's fall, she cannot meet her burden of proof at trial, and summary judgment is warranted. Second, Jefferson Parish argues that the trial court erred in admitting into evidence an undated, unverified, and unauthenticated photograph that was attached to Ms. Davis's affidavit.

In opposition, Ms. Davis argues that the assertion in her affidavit that she saw Jefferson Parish workers inspecting the area *before* she fell, which suggests that Jefferson Parish had actual knowledge of the alleged defect, constitutes valid evidence that creates a genuine issue of fact. Ms. Davis contends that the fact that her affidavit may be self-serving goes to the weight of the testimony, not to its admissibility, citing *Lambert v. Heirs of Adams*, 325 So.2d 331, 334 (La. App. 3d Cir. 1975) and *W.L. Somner Co., Inc. v. Pacific-Atlantic Oil Co.*, 522 So.2d 1335, 1339 (La. App. 2d Cir. 1988). Ms. Davis points out that a judge's role is not to

evaluate the weight of the evidence or to determine the truth of the matter, but to determine whether there is a genuine issue of triable fact. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So.3d 874, 878. She contends that the court must assume that all affiants are credible. *Broussard v. Univ. Hosp. & Clinics*, 21-153 (La. App. 3 Cir. 11/17/21), 330 So.3d 723, 728; *Joliboix v. Cajun Comfort, Inc.*, 16-414 (La. App. 5 Cir. 12/7/16), 207 So.3d 655, 658; *Montalbano v. Persich*, 18-602, 603 (La. App. 5 Cir. 5/29/19), 274 So.3d 855, 860-61. As such, any contradiction in witness testimony that creates a material issue of fact renders summary judgment impossible.

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3). The burden of proof rests with the mover. La. C.C.P. art. 966 D(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id*. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id*.

We review the denial of a motion for summary judgment *de novo*. *Robinson v. Otis Condominium Ass'n, Inc.*, 20-359 (La. App. 5 Cir. 2/3/21), 315 So.3d 356, 361, *writ denied*, 21-343 (La. 4/27/21), 314 So.3d 837. Under this standard, we use the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id*.

A fact is "material" when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. *Alexander v. Parish of St. John the Baptist*, 12-173 (La. App. 5 Cir. 10/16/12), 102 So.3d 904, 909, *writ denied*, 12-2448 (La. 1/11/13), 107 So.3d 617. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. *Id*.

The party moving for summary judgment must meet a strict standard of showing that the facts are clear and that any real doubt as to the existence of a genuine issue of material fact has been excluded. *Robinson*, 315 So.3d at 361. If the mover meets this burden, the burden shifts to the non-mover to present evidence demonstrating that material issues of fact remain. *Id*. "Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party [who has the burden of proof at trial] to produce evidence of a material factual dispute mandates the granting of the motion." *Portillo v. Progressive Paloverde Ins. Co.*, 13-815 (La. App. 5 Cir. 3/26/14), 138 So.3d 696, 698.

La. R.S. 9:2800, entitled "Limitation of liability for public bodies," provides, in pertinent part:

> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

To recover under this statute, a plaintiff must prove that: (1) the public entity had custody of the thing that caused the plaintiff's injuries or damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) the public entity had actual or constructive knowledge of the defect and did not

6

take corrective measures within a reasonable time; and (4) the defect in the thing was a cause-in-fact of the plaintiff's injuries. *Perdomo v. City of Kenner*, 18-156 (La. App. 5 Cir. 10/17/18), 258 So.3d 983, 991-92, *writs denied*, 18-1860 (La. 1/18/19), 262 So.3d 288 and 18-1861 (La. 1/18/19), 262 So.3d 895. The failure to prove any one of the requirements enumerated in La. R.S. 9:2800 is fatal to plaintiff's case. *Batiste v. United Fire & Cas. Co.*, 17-482 (La. App. 5 Cir. 3/14/18), 241 So.3d 491, 497-98; *Lemoine v. Jefferson Par. Dep't of Water*, 99-440 (La. App. 5 Cir. 11/29/94), 646 So.2d 1194, 1196-97.

Actual notice under La. R.S. 9:2800 has been found in cases where complaints about the injury-causing defect were received by the proper authorities. *Perdomo*, 258 So.3d at 992. Ms. Davis admits that she did not notify the Parish before her fall of the leaking water on the sidewalk, and the Parish states that it did not have notice until after Ms. Davis's accident. Yet the affidavit that Ms. Davis submitted with her opposition to Jefferson Parish's motion for summary judgment states that she "had seen workers inspecting the leak and wet sidewalk and driveway before her fall, wearing green uniforms and driving a white and green pickup truck with a Jefferson Parish Water Department logo on the doors and numbers on the tailgate." Ms. Davis also claims in her affidavit that two of her neighbors can corroborate these facts, but she did not submit affidavits or deposition testimony from these additional witnesses.

The affidavit of Ms. Bratton, which Jefferson Parish submitted in support of its motion for summary judgment, states that there were no work orders, phone calls, complaints, or reports related to any leak or water-related issue in the vicinity of Ms. Davis's home before her fall. Ms. Davis testified at her deposition that she alerted the Beechgrove Homes maintenance man about the leak in April of 2019, approximately three months before her fall, but after learning that the issue was not Beechgrove's responsibility, she never alerted the Parish. Ms. Davis's subsequent

7

affidavit, in which she claims to have seen Jefferson Parish workers inspecting the site of the leak before the date of her fall, constitutes self-serving and uncorroborated evidence that is insufficient to create a genuine issue of material fact as to whether the Parish had actual notice of the alleged defect. "A plaintiff may not satisfy his/her burden on summary judgment by relying on allegations and uncorroborated, self-serving testimony in response to the defendant's properly made and supported motion for summary judgment." *Caminita v. Roman Catholic Church of Archdiocese of New Orleans*, 20-54 (La. App. 5 Cir. 7/8/20), 299 So.3d 1269, 1272; *see also Sims-Gale v. Cox Commc'ns of New Orleans*, 04-952 (La. App. 4 Cir. 4/20/05), 905 So.2d 311, 313-14 (finding that plaintiff's reliance on her own self-serving and factually unsupported affidavit was not the type of factual support required to demonstrate that she would be able to meet her evidentiary burden of proof at trial).

In *Caminita*, *supra*, plaintiffs sued the defendants after their son Gino, a fifth grade student at Our Lady of Divine Providence School, allegedly slipped and fell on water in the stairwell at school. Plaintiffs alleged that the water accumulated due to a leak in the roof, which constituted an unreasonably dangerous condition. Defendants submitted evidence that the fifth grader initially reported that he tripped and fell over his school bag. Plaintiffs argued that the student's account of the water leak, which differed from the report that he fell over his school bag, presented credibility determinations that were inappropriate for summary judgment. Noting that it was plaintiff's burden to prove that defendants had actual or constructive notice of the dangerous condition allegedly caused by the water leak, this Court granted the defendants' writ application and rendered summary judgment in defendants' favor because plaintiffs had failed to satisfy their burden of proof. "Gino's self-serving testimony was not corroborated by evidence that there was a water leak from the ceiling on the day he slipped and fell in the

8

stairwell, and the testimony does not create a genuine issue of material fact." 299 So.3d at 1274. As in *Caminita*, Ms. Davis failed to include corroborating evidence, such as affidavits from the witnesses who allegedly also saw Parish workers at the site before her fall, in opposition to Jefferson Parish's motion for summary judgment.

Although Ms. Davis's affidavit fails to establish that Jefferson Parish had actual notice of the defect before her accident, we also must evaluate whether the Parish had constructive notice of the leak. La. R.S. 9:2800 D defines "constructive notice" as the existence of facts that infer actual knowledge. "Generally, constructive notice can be found if the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury." *Perdomo*, 258 So.3d at 992.

To carry her burden of showing that Jefferson Parish had constructive notice of the allegedly dangerous condition created by the leaking pipe, Ms. Davis would have had to show that the leak existed for such a period of time that the Parish had a reasonable opportunity to remedy the defect but failed to do so. *See*, *e.g.*, *Burns v. Sedgwick Claims Mgmt. Servs., Inc.*, 14-421 (La. App. 5 Cir. 11/25/14), 165 So.3d 147, 156 (discussing merchant liability under La. R.S. 9:2800.6).

Ms. Davis's deposition testimony establishes that the leak existed for approximately three months before her accident. She states that she reported the leak to the maintenance man for Beechgrove Homes in April, and that she may have noticed the leak approximately two weeks before reporting it to him. There were small bubbles at first, but often she did not notice the water. She stated: "It wasn't bad or anything then." Although the leak may have existed for three months, there is no evidence in the record before us of how the leak may have progressed or when algae began to collect at the site of the leak to create the

9

allegedly dangerous condition. By her own testimony, Ms. Davis herself often did not take notice of the area immediately adjacent to her driveway.

In *Jeansonne v. S. Cen. Bell Tel. Co.*, 08-568 (La. App. 5 Cir. 1/13/09), 8 So.3d 613, 620, the plaintiff tripped over guy wires or cables that supported a utility pole but impeded a sidewalk. The plaintiff sued Jefferson Parish and the utilities who used the pole. The plaintiff admitted that she did not notify the Parish about the condition, but she argued that the Parish had constructive notice of the defect because it was obvious. This Court determined that the mere existence of a defect on the sidewalk was insufficient to constitute actual or constructive notice.

Here, without more, we cannot say that the allegedly dangerous condition on the sidewalk existed for such a period of time that Jefferson Parish had a reasonable opportunity to remedy the defect. As such, Ms. Davis cannot meet her burden of proving at trial that Jefferson Parish had constructive notice under La. R.S. 9:2800.

In its writ application, Jefferson Parish also assigns as error the trial court's admission of photo evidence. In her opposition, Ms. Davis does not dispute that the photo in question was taken after she fell. Moreover, there is no indication that Jefferson Parish objected to the introduction of this evidence in the court below, that the trial court ruled on the admissibility of this evidence, or that it relied on this evidence in particular when denying Jefferson Parish's motion for summary judgment. For these reasons, and because we review a motion for summary judgment de novo and already have determined that Jefferson Parish's motion for summary judgment has merit, this assignment of error warrants no further review.

CONCLUSION

As Ms. Davis cannot meet her burden of proving at trial that Jefferson Parish had actual or constructive notice of the alleged defect before July 23, 2019, the date of her fall, we grant the writ application, reverse the judgment of the trial

10

court, and render summary judgment in favor of the defendants, Consolidated

Road District A for the Parish of Jefferson, Consolidated Drainage District No. 1

for the Parish of Jefferson, and Consolidated Sewerage District of Jefferson Parish.

Ms. Davis's claims against these defendants are dismissed with prejudice.

**WRIT GRANTED, JUDGMENT REVERSED,
MOTION FOR SUMMARY JUDGMENT GRANTED,
PLAINTIFF'S CLAIMS DISMISSED WITH PREJUDICE**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 5, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-C-240**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
GUICE A. GIAMBRONE, III (RELATOR)          IVANA DILLAS (RELATOR)

**MAILED**
ELIZABETH M. GAUDIN (RESPONDENT)
PIERRE F. GAUDIN, JR. (RESPONDENT)
ATTORNEYS AT LAW
1088 FOURTH STREET
GRETNA, LA 70053